UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

Plaintiff,

vs.                                                    REPORT AND RECOMMENDATION

David Leroy Rehm,

Defendant.            Crim.  08-162 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Suppress Search and Seizure.

A Hearing on the Defendant's Motion was conducted on June 18, 2008, at which time,

the Defendant appeared personally, and by Paul C. Engh, Esq., and the Government

appeared by Kimberly A. Svendsen, Assistant United States Attorney.[1]  For reasons

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motion.  Leave was granted, and the last submission on the issues was received on June 27, 2008, at which time, the Motion was taken under advisement.  See, Title 18 U.S.C. §3161(h)(1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v.
(continued...)

which follow, we recommend that the Defendant's Motion to Suppress Search and Seizure be denied.

## II.  Factual and Procedural Background

The Defendant is charged with one (1) Count of Assault with a Dangerous Weapon, in violation of Title 18 U.S.C. §§113(a)(3), 1151, and 1152.  The alleged violation is said to have occurred on or about April 19, 2008, in this State and District, and within the exterior boundaries of the Red Lake Indian Reservation.  According to the Indictment, see, Docket No. 13, on that date the Defendant, who is a non-Indian, allegedly assaulted Willa Jourdain ("Jourdain"), who is an Indian, with a 12-gauge shotgun.  As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[1](...continued)
Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

[2]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601,
(continued...)

At the Motions Hearing that was held on June 18, 2008, the Government offered the testimony of Wilfred Strong ("Strong"), who is a law enforcement officer with the Red Lake Tribal Police Department.  Strong testified that, on the evening of April 18, 2008, he was working as a patrol officer on the Red Lake Hospital compound.  According to Strong, at approximately 4:00 o'clock a.m., in the morning of April 19, 2008, he received a call from the police dispatcher, who stated that an assault with a shotgun had been reported at a house on the compound.  Strong, who was accompanied by Officer Mark Underhill ("Underhill"), arrived at the house, which he later identified as Jourdain's residence, at approximately 4:05 o'clock a.m., and another police officer, Dana Lyons ("Lyons"), arrived after them at the scene.  A large black Ford pickup truck, with a Minnesota license plate (the "Vehicle"), was parked in the driveway, and another vehicle, that had Red Lake Tribal license plates, was parked on the side of the house.

Strong testified that when he arrived on the scene, he saw a man who was shouting, and running across the lawn of the house, in the direction of the police. Lyons handcuffed that man, who identified himself as Kevin Little ("Little"), and who

---

[2](...continued)
610 (9th Cir. 1990).

stated that he was a victim of the assault, and that the alleged assailant was still inside the house.  A man subsequently emerged from the house, and sat on the step of the front porch, and the police officers ordered him down from the porch and handcuffed him, and identified him as the Defendant.  Jourdain, and her son, then came onto the porch, and Jourdain stated that Little was her guest, and that the Defendant had assaulted her with a shotgun.  Strong testified that, after he handcuffed the Defendant, he patted down his clothing, and found three (3) rounds of live 12-gauge shotgun ammunition in an outer pocket of the Defendant's clothing.  The Defendant was then placed in the back of a squad car, and Strong asked him where he had placed the shotgun, and the Defendant replied that he had placed it in his truck.  On cross examination, Strong testified that, when he handcuffed the Defendant, he noticed that his breath smelled of alcohol, his eyes were watery, and his speech was slurred, and he believed, at that time, that the Defendant was intoxicated.

Strong then sought to locate the shotgun, and he spoke to Jourdain, who stated that the Defendant had made a threatening telephone call to her earlier that morning, at approximately 12:55 o'clock a.m., and that, subsequently, he had come to her house, forced open the front door, pointed a shotgun at her, her son, and Little, and then punched all three (3) of them.  Jourdain told Strong that the Defendant forced the

barrel of the shotgun through the door of the bathroom, where she was standing, and then opened the door of the bathroom, threatened to shoot her, and pointed the shotgun at her chest. Jourdain then called 911, and the Defendant took her cell phone from her while she was making that call.

Next, Strong testified that he spoke with Little, who stated that, while he was in the house, the Defendant pointed a shotgun at him and punched him, and that, consequently, Little went outside and, while he was outside, he saw the Defendant leave the house, and place something, that looked like a shotgun, in the back of the pickup truck. Strong stated that he looked inside the pickup truck, and saw several shotgun shells on the driver's seat and, after opening the unlocked door of the Vehicle, which both the Defendant, and Jourdain, had identified as belonging to the Defendant, he searched the interior, but did not locate the shotgun. Lyons then went to the squad car, and asked the Defendant for the keys to the pickup truck, so that the police officers could open the locked rear gate of the Vehicle; however, the Defendant refused to give the officers his keys. Strong testified that the back of the pickup truck was covered with a tarp, which was attached with velcro straps, and that he lifted the right rear corner of the tarp, and by means of the light from his flashlight, he could see a gun case near the front of the bed of the pickup truck, on the driver's side.

According to Strong, he believed that the Defendant had placed the shotgun in that gun case.

At approximately 5:15 o'clock a.m., Strong took the Defendant to the Red Lake Detention Center, and observed that, as the officers there booked the Defendant, they searched his pockets, and found live shotgun ammunition in his inside left jacket pocket.

At the Hearing, the Government offered, as Exhibits, a recording of the 911 call that was made by Jourdain's son, on the morning of April 19, 2008, in which he stated that a man, who he identified as the Defendant, had entered his house with a shotgun, see, Government's Exhibit No. 1, and a Search Warrant, and supporting Affidavit, which is dated April 21, 2008,  along with an Inventory Return, which is dated April 24, 2008, and which was filed in this Court.   See, Government's Exhibit No. 2.

The Search Warrant, which was proffered by the Government, was issued by a United States Magistrate Judge on April 21, 2008, and authorized a search of a black 2004 Ford Super Duty vehicle, with a Minnesota license plate, that was registered to the Defendant, in order to search for a 12-gauge shotgun, and 12-gauge ammunition. See, Exhibit 2, Warrant.

In support of the Search Warrant, Timothy Ball ("Ball"), who is a Special Agent with the Federal Bureau of Investigation, submitted an Application and Affidavit, which set forth the reasons that caused him to believe that evidence of criminal activity would be found in the Defendant's vehicle.  Id. at Application.  Ball is assigned to the investigation of violent crimes which take place on the Red Lake Indian Reservation.  According to Ball, early in the morning of April 19, 2008, Officers Lyons and Strong, from the Red Lake Police Department, responded to a report of an assault, with a dangerous weapon, at the Jourdain residence and, when they arrived on the scene, Jourdain exited the house, was crying and extremely scared, and identified the Defendant as the man who had entered her residence with a shotgun. Strong patted down the Defendant, and found three (3) live 12-gauge shotgun shells, in his left outer jacket pocket, and the Defendant stated that he had placed the shotgun in his truck.

In his Affidavit, Ball averred that Jourdain informed Strong that the Defendant had called her earlier that night, and had threatened her, and had been at her residence before, as she had been in a relationship with him for approximately one and a half (1½) years, and had lived with him.  Jourdain told Strong that the Defendant had kicked in her door, and had threatened to shoot her, her fourteen (14) year old son,

D.J.W., Little, and her friend Brendon May ("May").  During booking, Red Lake officers at the Red Lake Detention Center discovered five (5) live 12-gauge shotgun shells in the inside left pocket of the Defendant's jacket.

According to Ball's Affidavit, on April 19, 2008, at approximately 5:16 o'clock a.m., Lyons interviewed Jourdain, who stated that she had been in the bathroom, getting ready for bed, when she heard a loud noise, and the Defendant kicked open her bathroom door and pointed a shotgun at her.  Jourdain grabbed the shotgun barrel and began to struggle with the Defendant, who hit her in the back of her head, kicked her in the crotch, and struck her feet in an attempt to get the shotgun away from her.  Jourdain and the Defendant struggled to the hallway, where D.J.W. intervened and, when Jourdain attempted to call 911, the Defendant took her cell phone and placed it in his pocket.

D.J.W. told Lyons that he saw his mother fighting with the Defendant, who was pointing a shotgun at his mother, and that the Defendant punched him in the face, while he punched the Defendant back, and together he and his mother forced the Defendant out of the front door, and then locked that door.  According to D.J.W., a short time later, the Defendant kicked in the front door, and D.J.W. began arguing with the Defendant.  Underhill interviewed Little on April 19, 2008, and Little stated

that he was lying down in the bedroom of Jourdain's house, when the Defendant entered the room holding a shotgun and placed the barrel to Little's chest. The Defendant told Little that he had "better leave now," and asked Little for Jourdain's location. Little observed the Defendant walk to the bathroom, and strike the door with the barrel of the shotgun, and then he saw Jourdain run out of the bathroom, while the Defendant held the shotgun in one hand, and slapped Jourdain with the other. After Little walked outside, he saw the Defendant leave the house and place something, which was long and might have been a shotgun, in the back of his truck.

Underhill also interviewed May on April 19, 2008, who stated that he was sleeping in the living room of Jourdain's house, when he heard a male voice from the bedroom, and saw Little walk out of the bedroom, and then leave the residence. May then saw the Defendant and Jourdain, who was trying to wrestle the shotgun from the Defendant. May stated that he eventually took the shotgun from the Defendant, and unloaded the weapon by removing the one (1) live shell from the gun. According to May, the Defendant left the house and May locked the door, and approximately five (5) minutes later, the Defendant kicked in the door and reentered the residence, and May held him and pushed him outside, when the police arrived.

Based on the information in the Affidavit, Ball stated that he believed that there was probable cause to believe that a 12-gauge shotgun, and 12-gauge ammunition, were located in the Vehicle that was identified in the Warrant Application, and were evidence of the crime of Assault with a Dangerous Weapon.

On April 24, 2008, the Government filed an Inventory Return, in which Ball reported that he executed the Warrant on April 21, 2008, at 4:10 o'clock p.m., and, in his search of the Vehicle, he found one (1) box of 12-gauge shotgun shells, one (1) 12-gauge shotgun, and a wallet. Id., at Return.

### III. Discussion

A. <u>The Defendant's Motion to Suppress Search and Seizure</u>. In his Motion, the Defendant seeks to suppress evidence that a 12-gauge shotgun, and 12-gauge shotgun shells, were found in his truck following his arrest for the alleged assault. The Defendant first argues that law enforcement officers lacked probable cause to conduct an initial warrantless search his Vehicle. In addition, the Defendant argues that the Search Warrant for his vehicle is facially insufficient, as there was no probable cause to find that the shotgun would be found in the Vehicle, and that the Warrant was tainted by the prior warrantless search. We address each contention in turn.

1.      The Warrantless Search of the Defendant's Vehicle.

a.      Standard of Review.  The Fourth Amendment assures that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." United States Constitution, Amendment IV.  "Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005), citing United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004).  The burden rests with the Government to establish the existence of an exception to the Warrant requirement. Id.

One exception to the Warrant requirement is the "automobile exception," "which authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." United States v. Hill, supra at 858, citing United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).  In the context of automobiles, our Court of Appeals has reiterated:

> As long as law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception.  See Pennsylvania v. Labron, [518 U.S. 938, 940] (1996); [United States v.] Martinez, 78 F.3d [399] at 401 [(8th Cir. 1996)].  Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or

evidence of a crime would be found in a particular place.
See Illinois v. Gates, [462 U.S. 213, 238] (1983).

United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

       b.    <u>Legal Analysis</u>.  The Defendant claims that the warrantless search of his Vehicle by Strong, on April 19, 2008, was unlawful, because the law enforcement officers, who were at the scene, lacked probable cause to conduct that search.  The Government disagrees, and argues that Strong had probable cause to believe that the Vehicle contained a shotgun, that had been used in an assault, and that they searched the Vehicle pursuant to the automobile exception.

We find that probable cause existed for the search of the Defendant's pickup truck, in order to locate the shotgun that officers believed had been used in an assault on several individuals.  At approximately 4:00 o'clock a.m., on April 19, 2008, Strong and the other officers had been dispatched to the Jourdain residence, on a report of an assault by an individual who had a shotgun.  At the Hearing, Strong testified that, at the scene, Jourdain had identified the Defendant as her assailant, and stated that he had a shotgun that he had pointed at her, and at others.  In addition, Little told Strong that the Defendant had also threatened him with a shotgun, and that he saw the Defendant place something, that looked like a shotgun, in the back of the pickup truck.

- 12 -

After they arrested the Defendant, Strong and the other officers searched the Jourdain

residence, in an effort to find the shotgun, and failed to locate the weapon.

Based on the statements of several witnesses, that the Defendant possessed a

weapon which had been used in an assault directly prior to the arrival of law

enforcement, Lyons asked the Defendant where he had put the shotgun, and the

Defendant replied that it was in his truck.[3]  Strong then looked in the window of the

---

[3]Although the Defendant has not moved to suppress his statement to Lyons, concerning the location of the weapon, under the "public safety" exception, which was first enunciated in New York v. Quarles, 467 U.S. 649, 659 (1984), law enforcement officers may question a suspect concerning matters "necessary to secure their own safety or the safety of the public," without administering a Miranda warning. Id. at 659. "[T]he availability of the exception does not depend upon the motivations of the individual officers involved" since, "[i]n a kaleidoscopic situation * * * where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception * * * should not be made to depend on the post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer." Id. at 656.

In adopting such an exception to Miranda, the Court concluded "that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657-58; see also, United States v. Luker, 395 F.3d 830, 833-34 (8th Cir. 2005), cert. denied, 546 U.S. 831 (2005); United States v. Williams, 181 F.3d 945, 953 (8th Cir. 1999); United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992), cert. denied, 503 U.S. 1011 (1992); United States v. Knox, 950 F.2d 516, 519 (8th Cir. 1991).  While the public safety exception is intentionally "narrow," Illinois v. Perkins, 496 U.S. 292, 308 (1990), we find it applicable to Lyons' questioning of the Defendant concerning the location of the shotgun, in the early hours
(continued...)

passenger compartment of the Vehicle, observed several shotgun shells on the driver's seat, and opened the unlocked door and searched for the weapon. When his search of the passenger compartment failed to produce the weapon, Strong lifted the tarp that covered the back of the pickup truck, and observed a gun case in the bed of the Vehicle, at which time he closed the tarp and ceased his search.

Given the statements of the cooperating eyewitnesses, and the corroborating statement of the Defendant, law enforcement had probable cause to believe that the shotgun, which had allegedly been employed in an assault of Jourdain, was located

---

[3](...continued)
of the morning, and shortly after an alleged assault with a firearm.

In his Memorandum, the Defendant suggests that his statement was not voluntary, as he was intoxicated, and he notes that Strong testified that, at the time of his arrest, the Defendant exhibited watery eyes and slurred speech, and smelled of alcohol. See, Defendant's Memorandum, Docket No. 35, at p. 2. However, while the personal characteristics of a suspect, such as his age, mental capacity, and intoxication, are pertinent to a determination of voluntariness, see, United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 2005), coercive police conduct is a "necessary predicate" to finding a statement involuntary, see, Colorado v. Connelly,479 U.S. 157, 167 (1986), and there is nothing in the Record before us that would establish any coercive police behavior. Since we find nothing in the Record before us to establish that the Defendant's will was overborne, or that his "capacity for self-determination was critically impaired," see, Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988), quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961), we conclude that the law enforcement officers properly relied on the Defendant's statement, that he had placed the shotgun in his Vehicle.

in the Defendant's truck.  See, e.g., United States v. Pruneda, 518 F.3d 597, 604 (8th Cir. 2008)(finding that information from a cooperative witness is sufficient to establish probable cause); United States v. Carter, 413 F.3d 712, 714-15 (8th Cir. 2005)(noting that probable cause can be found when statements are made by witnesses, who would be subject to prosecution for false statements, and are corroborated by other evidence).  Accordingly, we find that the warrantless search of the Vehicle was valid, and we recommend that the Defendant's Motion to Suppress, on that basis, be denied.

$\qquad$ 2. $\quad$ The Validity of the Search Warrant.

$\qquad\qquad$ a. $\quad$ Standard of Review.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  See, Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular,

designated place.  See, <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995); <u>United States v. Tagbering</u>, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); see also, <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996).

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" <u>United States v. Ryan</u>, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting <u>United States v. Goodman</u>, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).  In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis.  See, <u>United States v. Anderson</u>, 933 F.2d 612, 614 (8th Cir. 1991); <u>Technical Ordnance, Inc. v. United States</u>, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).

Moreover, the reviewing Court must not engage in a <u>de novo</u> review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  See, <u>United States v. Maxim</u>, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); <u>United States v. Curry</u>, 911 F.2d 72, 75 (8th Cir. 1990), cert.

denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the

issuing Judicial Officer is consistent with the Fourth Amendment's sound preference

for searches that are conducted pursuant to Warrants.  See, Illinois v. Gates, supra at

236.

        2.   Legal Analysis.  The Defendant claims that the Search Warrant

was facially invalid, as it failed to establish probable cause that the shotgun, and 12-

gauge ammunition, would be found in the Vehicle.  No testimony was adduced at the

Hearing on the Defendant's Motion, and therefore, as have the parties, we limit our

consideration to the "four corners" of the challenged Search Warrant.

    Our review of the Search Warrant for the Vehicle, and its underlying

application, confirms the appraisal of the issuing Judicial Officer, that ample probable

cause supported the issuance of the Warrant, and further, that the Warrant was not

otherwise fatally defective.

    The Affidavit, which was submitted by Bell in support of his Application for

a Warrant, attested to the fact that Jourdain had identified the Defendant as the man

who entered her residence with a shotgun, and that officers, on the scene, had

discovered 12-gauge shotgun shells, in the Defendant's pocket, when they handcuffed

him, and additional ammunition when he was subsequently booked into the Red Lake

Detention Center.  Jourdain's son, and Little, also informed police officers that the Defendant had threatened each of them, and others, with a shotgun, and Little stated that he observed the Defendant place something in the bed of his pickup truck that looked like a shotgun.

According to Ball's Affidavit, Underhill stated that he confronted the Defendant, and took the shotgun away from him, and removed the one (1) live shell from the weapon, and that the Defendant then left the house.  Ball also attested that the police officers had determined that the pickup truck on the scene was registered to the Defendant.  Although we recognize that some of the statements, which were included in Ball's Affidavit, were based upon the observations of other police officers, "probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  United States v. Wells, supra at 287, quoting United States v. Horne, 4 F.3d 579, 585 (8th Cir. 1993); see also, Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005), citing United States v. Hensley, 469 U.S. 221, 232 (1985).  As such, we concur with the implicit determination of the issuing Judicial Officer, that probable

cause was presented to believe that the Defendant possessed a shotgun, which he had stored in his Vehicle.

Moreover, it is undisputed that law enforcement had established a nexus, between the Defendant and the Vehicle, given that several witnesses, including the Defendant, identified the black pickup truck as belonging to him, and Little, and the Defendant, both informed the officers that the Defendant had placed the shotgun in the pickup truck. Nor can there be any issue as to the staleness of the information contained in the Affidavit, when the statements were taken from eyewitnesses at the scene of the alleged assault, and presented to the Judicial Officer, within two (2) days of the incident. Therefore, we reject the Defendant's argument that the Search Warrant, for his Vehicle, was defective on probable cause grounds.[4]

In the alternative, the Defendant argues that the Warrant was tainted by the initial Warrantless search of his pickup truck. Although we have already concluded that the warrantless search of the Defendant's truck was lawful, based on the

---

[4]Even if the information in the Search Warrant had been insufficient to establish probable cause, we would be compelled, by Supreme Court precedent, to find that the officers' reliance upon the Search Warrant was reasonable, because the Warrant was "not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).

automobile exception, we alternatively conclude that the search, pursuant to the Warrant, is independently valid.  Exclusion of evidence is not necessary, even when a Warrant is based, in part, on tainted evidence, "if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information."  United States v. Robinson, 441 F. Supp.2d 1029, 1036 (D. Minn. 2006), quoting United States v. Williams, 633 F.2d 742, 745 (8th Cir. 1980). Here, the Affidavit, which was submitted by Ball, did not include any information concerning Strong's warrantless search of the Defendant's Vehicle, and we have already determined that the Judicial Officer had probable cause to issue the Warrant, based on the information that was provided.  Therefore, since we find no taint in the information that was provided to the Judicial Officer, we reject the Defendant's contention, that the Warrant was not supported by probable cause, and recommend that his Motion to Suppress be denied in all respects.

NOW, THEREFORE, It  is --

RECOMMENDED:

That the Defendant's Motion to Suppress Search and Seizure [Docket No. 25] be denied.

Dated:  July 7, 2008                          s/Raymond L. Erickson
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 24, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 24, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.